IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JERALD W. FITZWATER, IRIS
F. FITZWATER, and BISHOP
LOUIS VAUGHN, SR. a/k/a
ALTON LOUIS VAUGHN, SR.                          PLAINTIFFS


        v.              Civil No. 08-3023


J. SKIPPER RAY, In his Professional
Capacity as State of Arkansas
Practicing Attorney and in his
Personal Capacity;
POLLY LEIMBERG, In Her Official Capacity
as Boone County, Arkansas, Circuit Court
Trial Assistant and in her Personal
Capacity;
GORDON WEBB, In His Official
Capacity as Boone County, Arkansas
Circuit Court Judge (Division 4) and
in his Personal Capacity;
KIMBERLEY WOODYARD, In her Official Capacity
as State of Arkansas Practicing
Attorney and in her Personal Capacity;
GAIL INMAN-CAMPBELL, In her Professional
Capacity as State of Arkansas Practicing
Attorney and in her Personal Capacity;
WILSON AND ASSOCIATES, P.L.L.C., In its
Professional Capacity as State of
Arkansas Corporation and in its Legal
Capacity;
SAMMY GREEN, In His Professional
Capacity as Manager/Owner of Advanced
Moving And Storage, Inc. and in his
Personal Capacity;
ADVANCED MOVING AND STORAGE, INC.,
In its Professional Capacity as State
of Arkansas Corporation
and in its Legal Capacity;
ROGER TURNER, In His Professional Capacity
as Manager/Owner of RE MAX UNLIMITED, INC.
and in his Personal Capacity;
RE MAX UNLIMITED, INC., In its Professional
Capacity as State of Arkansas Corporation

and in its Legal Capacity;
JEREMIAH W. "JAY" NIXON, In his Official
Capacity as State of Missouri Attorney
General, In his Professional Capacity
as State of Missouri Practicing Attorney
and in his Personal Capacity;
RONALD JAMES CARRIER, In his Official
Capacity as State of Missouri Assistant
Attorney General, In his Professional
Capacity as State of Missouri Practicing
Attorney and in his Personal Capacity;
JOSHUA DAVID HARREL, In his Official
Capacity as State of Missouri Assistant
Attorney General, In his Professional
Capacity as State of Missouri Practicing
Attorney and in his Personal Capacity;
MARGIE LAMARRE, In her Official Capacity
as State of Missouri Employee, and in
her Personal Capacity,                                    DEFENDANTS

## O R D E R

Now on this 8th day of July, 2008, come on for consideration
the following  motions:

\*    **Motion To Dismiss** of separate defendants Wilson &
Associates, P.L.L.C., and J. Skipper Ray (document #16);

\*    **Motion To Dismiss** of separate defendants Gordon Webb and
Polly Leimberg (document #18);

\*    **Motion Of Kimberley Woodyard ("Woodyard") To Dismiss**
(document #24);

\*    **Motion To Dismiss** of separate defendants Roger Turner and
ReMax Unlimited, Inc. (document #29);

\*    **Motion To Dismiss** of separate defendant Gail Inman-
Campbell (document #31);

\*    **Plaintiffs' Objections And Opposition And Motion To**

**Strike Defendant Gail Inman-Campbell Motion To Dismiss And To Strike Defendant Gail Inman-Campbell Memo Brief In Support Of Motion To Dismiss** (document #36);

\*      **Plaintiffs' Objections And Opposition And Motion To Strike Defendants' Roger Turner And ReMax Unlimited, Inc. Motion To Dismiss And To Strike Defendants' Roger Turner And ReMax Unlimited, Inc. Memo Brief In Support Of Motion To Dismiss** (document #38); and

\*      **Defendants Nixon, Carrier, Harrel, And LaMarre's Motion To Dismiss** (document #39),

and from said motions, and the responses thereto, the Court finds and orders as follows:

1.    Plaintiffs claim to bring suit under **42 U.S.C. §1983, §1985, §1986**, and **§1988,** and under **28 U.S.C. §2201** and **§2202,** and claim to allege violations of their rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.   They also claim that they are asserting claims under **18 U.S.C. §1961-1968** (the Racketeer Influenced and Corrupt Organizations Act ("RICO")); **29 U.S.C. §216(b) (**the Fair Labor Standards Act ("FLSA")); **29 U.C. §626(b)** (the Age Discrimination in Employment Act ("ADEA")); **29 U.S.C. §1140** (the Employee Retirement Income Security Act ("ERISA)); and the Arkansas law of defamation.

The Court refers to what Plaintiffs, themselves, claim their

-3-

Complaint asserts for a reason -- that being that the Complaint,

itself, is certainly not clear as to what is being claimed or

asserted.   As a matter of fact, the Court found it virtually

impossible to determine -- from the Complaint -- what plaintiffs'

claims are.  The Complaint consists of 36 pages of inapposite legal

citations[1], rambling and conclusory allegations[2], and essentially

incoherent accusations[3].

     The Complaint makes no assertions that the Court can relate to

FLSA, ADEA, or ERISA nor does it -- even when read by the kindly

light of **Haines v. Kerner**, **404 U.S. 519 (1972)** -- advise a reader

of the basis upon which plaintiffs claim they are entitled to

relief.    While it would appear that their contentions have

something to do with *pro se* representation in other court cases,

that it not clear but only speculative.

     2.    **F.R.C.P. 8(a)** requires a pleading that states a claim for

relief to contain three things:

     *    a short and plain statement of the grounds for the

court's jurisdiction;

     *    a   short and plain statement of the claim showing that

---

[1]Six pages are devoted to the topic of "Legal Discussion," a topic totally inappropriate in a complaint.

[2]For example, paragraph 5.17 accuses defendants of "implementing and advocating a tidal wave of fear, intimidation, humiliation, and the continue spread of threat of violent against minorities and pro se litigants."

[3]For example, paragraph 7.2 alleges that "[i]n the year 2007 and 2008 the Defendants acting under the color, executed wrong execution of judgment upon Plaintiffs advocates for justice in bad faith or with malice and/or with actual intent to cause injury to Plaintiffs."

the pleader is entitled to relief; and

    \*    a demand for the relief sought.

**Rule 8(d)(1)** states that "[e]ach allegation must be simple, concise, and direct."

These requirements are designed to result in a complaint which -- briefly and concisely -- gives the opposing party fair notice of what the plaintiff's claim is and of the grounds upon which it rests. **Swierkiewicz v. Sorema N.A.**, **534 U.S. 506, 512 (2002).** Even *pro se* complaints, though liberally construed, "must contain something more than mere conclusory statements that are unsupported by specific facts." **Kaylor v. Fields**, **661 F.2d 1177, 1183 (8th Cir. 1981).**

Plaintiffs' Complaint does not comply with **Rule 8**[4], thus placing both the Court and the defendants in the difficult position of having to guess at what is alleged. The Court declines to engage in such a guessing game.

Instead, the Court will direct that, if plaintiffs desire to pursue this matter, they amend their Complaint -- no later than fourteen (14) days from the date of this Order -- to comply with **Rule 8.** In so doing, the Court cautions plaintiffs that it will expect them to expend a good faith effort to re-assert their Complaint in compliance with the Rule. If the Complaint is not

---

[4]Plaintiffs are clearly aware of the requirements of **Rule 8**, because they cite it in their responses to several of the pending motions to dismiss.

amended to so comply, it will be subject to dismissal.

3.   The aforementioned problems with the Complaint are implicated in the Court's attempt to resolve the Motions To Dismiss of Wilson & Associates, P.L.L.C. and J. Skipper Ray (document #16); Gordon Webb and Polly Leimberg (document #18); Roger Turner and ReMax Unlimited, Inc. (document #29); and Gail Inman-Campbell (document #31).

(a)  These defendants assert that plaintiffs' claims arise out of one or more other legal proceedings -- the details of which they purport to set forth in their briefs.  While, as already mentioned, the Court is unable to fully understand the claims plaintiffs wish to assert in their defective Complaint, plaintiffs deny that the other cases are so related.  The Court will not attempt to rule on these motions unless and until an appropriate amended complaint is filed as noted above, at which time it should be apparent whether or not there is any connection between this and other cases.

(b)  Another problem with these Motions To Dismiss is that they rely on matters outside the pleadings -- mainly copies of documents filed in the other cases referred to in the motions.  If the Court is to consider those matters, it will be necessary to convert the motions to motions for summary judgment under **F.R.C.P. 12(d)**.

Since it has ruled the Complaint must be amended if this case is to go forward, there is no reason to now take up these motions

-6-

and the Court will deny them as moot.  If and when a proper amended complaint is filed, the parties will be allowed to file appropriate motions to dismiss or motions for summary judgment within the time allowed by the rules after such amendment.

4.    Separate defendant Kimberley Woodyard moves to dismiss for insufficiency of process and insufficiency of service of process.

This motion is accompanied by the Affidavit of Ginger Wimberly, in which Wimberly avers:

*    that she found an envelope containing the Complaint and Summons in this case leaning against the door of the office of the standing Chapter 13 Trustee when she arrived for work on May 19, 2008;

*    that this office is located at 1 Riverfront Place, Suite 555, North Little Rock, Arkansas; and

*    that Kimberley Woodyard works in that office, but does not reside there.

Woodyard also attaches a copy of plaintiffs' Return of Service filed as document #12 in this matter.  The Return of Service contains a declaration, made under penalty of perjury by "C.E. Vaughn," that he personally served Woodyard at #1 Riverfront Place, Suite 555, North Little Rock, Arkansas, on May 16, 2008.

Although Woodyard files no personal affidavit saying that she was *not* personally served as per the sworn declaration of Mr.

-7-

Vaughn, a fair reading of Wimberly's Affidavit indicates that there

was no personal service on Woodyard.

Plaintiffs do not make any cogent -- or even very coherent --

response to this motion.  To the extent they address it, they state

as follows:

> 5.7.  All Defendants have admitted that service of
> summons were personally, properly, timely, and perfectly
> made upon them even though some have made moot argument
> of immaterial issues for federal service vary from State
> service of summons.
> 5.8.  No Defendant has disputed, nor filed any
> pleading disputing that service of summons was not
> personally and properly, timely, and perfectly made upon
> by process server nor has Defendant answered summons.
> 5.9.  If any issue exist concerning service the
> cCourt has the discretion to request affadavit or
> deposition of process servers.

The foregoing is clearly incorrect, given that Woodyard *has*

disputed that she was properly served with process in this case.

In addition, plaintiffs' arguments do not fairly meet

Woodyard's contention -- which is correct as a matter of law --

that leaving the Summons and Complaint at her office does not

amount to service of process upon her.

As the matter now stands, the Court has no difficulty

concluding that plaintiffs have not perfected service upon

Woodyard.  Accordingly, it will quash the purported service.

However, the Court will deny Woodyard's Motion To Dismiss because

the time for perfecting service has not expired, and plaintiffs may

succeed in filing a proper amended complaint and obtaining good

service upon Woodyard in the time remaining to them.  See **Haley v. Simmons**, **529 F.2d 78 (8th Cir. 1976)**.

5.    Separate defendants Nixon, Carrier, Harrel and LaMarre also contend that there was insufficient service of process as to them.

They point out that the Returns of Service as to each of them contain a statement made under penalty of perjury by G.L. Vaughn that he personally served that defendant on May 14, 2008, at 1010 Boonville, Springfield, Missouri.

Defendants Carrier, Harrel and LaMarre offer Affidavits in which they describe what happened at 1010 Boonville on May 14, 2008.

(a)  Carrier avers:

*    that 1010 Boonville is the address of the Green County, Missouri, Judicial Courts Facility, where he, Harrel and LaMarre (but not Nixon) were attending a hearing related to the State of Missouri's felony prosecution of Alton Louis Vaughn, Sr.;

*    that a man he did not know attempted to hand him some envelopes, but that he did not take them;

*    that a few minutes later he felt something touch his shoulder, and when he looked behind him he found envelopes on the floor.  When he picked the envelopes up, he found they contained pleadings.  He does not indicate whether those pleadings included the Complaint in this case, or a Summons directed to any defendant.

-9-

(b)   Harrel avers:

*      that he was also at the hearing on May 14, 2008, and saw Carlos Romious, Vaughn's attorney in the criminal case, "touch AAG Carrier on the shoulder with a stack of papers bound together by a rubber band."; and

*      that no one attempted to hand Harrel any documents and he did not pick any documents up off the floor.

(c)   LaMarre avers:

*      that she was also at the hearing on May 14, 2008, and saw Romious approach Carrier "with multiple envelopes," which Romious "dropped . . . on the floor."; and

*      that no one attempted to hand LaMarre any documents, and she did not pick any documents up off the floor.

Plaintiffs filed no responsive affidavits and, thus, presumably simply rely on their contentions that they have proper service on all three of these defendants.  Most importantly from the Court's standpoint, plaintiffs do not deny the assertions set out in the affidavits of these three defendants.

**F.R.C.P. 4** governs service of process in cases filed in the United States District Courts, and provides that an individual within a judicial district of the United States may be served in one of the following ways:

(a)   by executing a waiver of service;

(b)   by following state law in the state where the case is

-10-

pending;

(c)  by following state law in the state where the service is made;

(c)  by delivering a copy of the summons and complaint to the individual personally;

(e)  by leaving a copy of the summons and complaint at the individual's dwelling with a person of suitable age and discretion who also resides there; or

(f)  by delivering a copy of the summons and complaint to an authorized agent of the individual.

It is clear that (a), (e), and (f) do not apply to the attempted service on Carrier, Harrel, or LaMarre -- but, rather, that "personal delivery" (which is an acceptable method of service under Missouri law and Arkansas law as well as federal law) was the method chosen by plaintiffs.

Based on the information before it, the Court does not believe that proper service on these three defendants was actually accomplished by this method.  In the Court's view, tapping a person on the back with suit papers and then dropping the papers to the floor does not amount to a "personal delivery of a summons and complaint" which is sufficient to give the Court personal jurisdiction over that person.  That conduct would not necessarily place the person on notice of what was attempting to be done and that person would have no obligation -- beyond, perhaps, common

courtesy -- to pick up the papers.  Moreover, there would be no reason for a person to feel entitled to read papers another person had dropped without explanation.  Such conduct would not be acceptable for delivery of a pizza -- much less important legal documents.

The Court also notes that the "tapping on the back and dropping on the floor" method of service apparently utilized here by plaintiffs as to Carrier was apparently not even carried out by G.L. Vaughn -- the person who declared, under penalty of perjury, that "[s]ervice of the Summons and complaint was made by me," and there is no evidence that even the "tapping on the back and dropping on the floor" method of service was attempted on either Harrel or LaMarre.  The Court concludes that service has not been perfected on Carrier, Harrel, or LaMarre.

The Court also finds that service has not been perfected as to Nixon, since he was not even present at the time and place where G.L. Vaughn declares -- under penalty of perjury -- that he personally served Nixon.

For these reasons, the Court finds that service of the Complaint has not been perfected as to Nixon, Carrier, Harrel, and LaMarre.  As with Woodyard, the Court will quash the purported service, but will not dismiss the Complaint as to these defendants, because the time for perfecting service has not yet expired and plaintiffs may yet file a proper amended complaint and  perfect

-12-

service against these defendants in a timely manner.

6.    Plaintiffs contend, in their Motion To Strike Inman-Campbell's Motion To Dismiss and their Motion To Strike the Motion To Dismiss of Roger Turner And ReMax Unlimited, Inc., that Inman-Campbell, Turner, and ReMax Unlimited, Inc., filed their responses to the Complaint "out of time and in direct violation of the Court's May 14, 2008 Order."  The Order referred to is found in the Summonses, which were issued and served on these defendants on May 14, 2008, and which gave them twenty days to answer the Complaint.

Pursuant to **F.R.C.P. 6(a)(1)**, May 14, 2008, is excluded from time computation, making the responses of Inman-Campbell, Turner, and ReMax Unlimited, Inc., due on June 3, 2008.  All three filed Motions To Dismiss on June 5, 2008.

Although these filings were late by two days, the Court does not consider it appropriate to strike them, in light of its handling of plaintiffs' transgressions against the rules of pleading and service of process.  Moreover, there is a strong preference for disposition of cases on their merits, **Bankers Trust Co. v. Mallis**, **435 U.S. 381 (1978)**, and the motions in question raise weighty substantive issues that the Court believes justify granting these defendants an extension of a few days in filing their responses -- especially since the Court is allowing plaintiffs to file an amended complaint and, if such is done, the parties will be allowed to re-file the same or similar motions and

-13-

responses, if appropriate.  Plaintiffs' Motions To Strike will, therefore, be denied.  If this case proceeds, however, all parties are cautioned to give careful attention to the time frames proscribed by the applicable rules of pleading.

7.   Analysis of the motions to dismiss has called to the Court's attention a situation which it considers very serious and concerning which it is obliged to take further action.

The people who completed the Returns of Service here under consideration, C.E. Vaughn and G.L. Vaughn, made  declarations about that service "under penalty of perjury under the law of the United States of America" which do not appear to be true on the facts as they now appear before the Court.

(a)  C.E. Vaughn declared that he personally served Woodyard at her office on May 16, 2008, yet Woodyard's co-worker said by sworn affidavit that the papers were found leaning against the office door on May 19, 2008.  It would seem obvious that if Vaughn actually served Woodyard with the papers on May 16, they would not have been found leaning against the office door on May 19, 2008.

The Court takes judicial notice that May 16, 2008, was a Friday, and May 19, 2008, was a Monday.  It is certainly possible that documents were left on Woodyard's office doorstep after business hours on May 16 and not discovered until May 19.  What is questionable -- in light of Wimberly's Affidavit -- is C.E. Vaughn's declaration under penalty of perjury that he "personally

served" Woodyard on May 16.

(b)   G.L. Vaughn declared that he personally served Nixon, Carrier, Harrel and LaMarre at the Green County, Missouri, Judicial Courts Facility on May 14, 2008.

The affidavits offered by the defendants indicate that the only act that connects any of these defendants to any effort at service on May 14, 2008, was the tapping of Carrier on the back and the dropping of the suit papers on the floor behind him -- and that this "tapping on the shoulder and dropping on the floor" was done by Carlos Romious and not by G.L. Vaughn, as he declared.

In addition, Nixon was not even present at the place and time of the alleged service.

In light of the foregoing, there is a serious question raised as to whether G.L. Vaughn personally served Nixon, Carrier, Harrel, or LeMarre on May 14, 2008, as he declared under penalty of perjury.

The plaintiffs have made no attempt to explain any of these discrepancies and simply contend that good service was made on all five defendants.

The Court would consider it to be a very serious matter if it should discover that a false statement was made in a sworn declaration in a document filed of record in this District.  In light of what now appears before it, the Court believes it is bound to recommend further investigation of the matter to ascertain

-15-

whether such has occurred.  Accordingly, the Court will refer this matter to the United States Attorney for the Western District of Arkansas, for his consideration of whether C.E. Vaughn or G.L. Vaughn has committed perjury or false swearing.

**IT IS THEREFORE ORDERED** that plaintiffs amend their Complaint -- no later than fourteen (14) days from the date of this Order -- to comply with **F.R.C.P. 8**, failing which the Complaint will be subject to dismissal.

**IT IS FURTHER ORDERED** that the **Motion To Dismiss** of separate defendants Wilson & Associates, P.L.L.C., and J. Skipper Ray (document #16); the **Motion To Dismiss** of separate defendants Gordon Webb and Polly Leimberg (document #18); the **Motion To Dismiss** of separate defendants Roger Turner and ReMax Unlimited, Inc. (document #29); and the **Motion To Dismiss** of separate defendant Gail Inman-Campbell (document #31) are **denied as moot**.  The moving parties may refile their motions within the time allowed by the Rules if the Complaint in this matter is timely amended, and plaintiffs will have the time allowed by the Rules to respond to any such motions.

**IT IS FURTHER ORDERED** that the **Motion Of Kimberley Woodyard ("Woodyard") To Dismiss** (document #24) is **denied**, but the purported service of process on Woodyard on May 16, 2008, is quashed.

**IT IS FURTHER ORDERED** that **Defendants Nixon**, **Carrier**, **Harrel**,

**And LaMarre's Motion To Dismiss** (document #39) is **denied**, but the purported service of process on Nixon, Carrier, Harrel, and LaMarre on May 14, 2008, is quashed.

**IT IS FURTHER ORDERED** that **Plaintiffs' Objections And Opposition And Motion To Strike Defendant Gail Inman-Campbell Motion To Dismiss And To Strike Defendant Gail Inman-Campbell Memo Brief In Support Of Motion To Dismiss** (document #36) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiffs' Objections And Opposition And Motion To Strike Defendants' Roger Turner And ReMax Unlimited, Inc. Motion To Dismiss And To Strike Defendants' Roger Turner And ReMax Unlimited, Inc. Memo Brief In Support Of Motion To Dismiss** (document #38) is **denied.**

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to the United States Attorney for the Western District of Arkansas, for his consideration of whether C.E. Vaughn or G.L. Vaughn has committed perjury or false swearing in connection with the Returns of Service filed with regard to Kimberly Woodyard, Jeremiah W. Nixon, Ronald James Carrier, Joshua David Harrel, or Margie LaMarre.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　**/s/ Jimm Larry Hendren**
　　　　　　　　　　　　　　　**JIMM LARRY HENDREN**
　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**